**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 10 CR 516 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| BRUCE BROWN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Bruce Brown moves to dismiss the indictment on the ground that the instant prosecution is barred by his plea agreement in a prior case. Dkt. #160.[1] For the reasons that follow, Brown's motion will be denied.

**BACKGROUND**

**I.      The Instant Mortgage Fraud Prosecution**

On February 23, 2011, the government filed a superseding indictment alleging that Brown had orchestrated a mortgage fraud scheme related to the purchase of several residential properties in the Chicago area. The indictment charges Brown with mail fraud, wire fraud, and bank fraud. The case proceeded to a jury trial on October 24, 2011, and Brown was convicted on all counts.

---

[1] Brown's memorandum references several different legal theories in a cursory fashion. *See, e.g.*, Dkt. #169 at 6 ("Based upon all the foregoing, the issue raised . . . here has been raised in several cases under different legal theories. . . . Whether the effect of a prior plea agreement on subsequent charges is discussed in double jeopardy terms, as estoppel, immunity or under application of contract principles, the issue is cognizable and appropriate for pre-trial determination by this court."). The court only addresses whether Brown's prior plea agreement bars the instant prosecution, which is the sole argument Brown pursues in his reply brief.

## II. Prior Income Tax and Money Laundering Prosecutions

Brown has been prosecuted and entered guilty pleas in two other cases in this district, case numbers 03 CR 397 (the "income tax prosecution") and 05 CR 73 (the "money laundering prosecution").

On September 23, 2004, Brown pleaded guilty to filing a false federal income tax return for the calendar year 1997. *See* Case No. 03 CR 397, Dkt. #30. Brown was sentenced to five years' probation with a condition of home confinement on January 26, 2005. *See* Case No. 03 CR 397, Dkt. #34. That same day, another complaint was filed under seal, alleging that Brown had laundered money obtained from illegal drug trafficking by the Black Disciples gang. *See* Case No. 05 CR 73, Dkt. #1.

Brown was subsequently indicted for money laundering, conspiracy to commit money laundering, and engaging in monetary transactions in property derived from unlawful activity. *See* Case No. 05 CR 73, Dkt. #12. On August 21, 2006, Brown pleaded guilty to count VI of the indictment, admitting in his plea agreement that he had purchased a Mercedes Benz on behalf of Kenyatta Coates and concealed the fact that Coates gave him a portion of the funds that he used to pay for the car.

Brown entered into a written plea agreement with the government. The second paragraph of the plea agreement states, "This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 05 CR 73." *See* Ex. A to Gov't Resp. to Mot. to Dismiss at 1. In exchange for Brown's guilty plea, the government promised to recommend a sentence of probation and intermittent confinement within the applicable Guideline range. *Id.* ¶ 17. Paragraph 21 of the

agreement provides, "Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in ths Agreement, to cause defendant to plead guilty." *Id.* ¶ 21. Paragraph 20 sets forth the consequences for Brown's failure to abide by the terms of the plea agreement:

> Defendant understands that his compliance with each part of this plea agreement extends throughout and beyond the period of his sentence, and failure to abide by any terms of the plea agreement is a violation of the plea agreement. He further understands that in the event he violates this plea agreement, the government, at its option, may move to revoke the plea agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this agreement, or to resentence defendant. Defendant understands and agrees that in the event that this plea agreement is breached by defendant, and the government elects to void the plea agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement of such prosecutions.

*Id.* ¶ 20. On December 6, 2006, Brown was sentenced to four months' intermittent confinement, with credit for time served. The sentence was modified on December 26, 2006, to a sentence of three years' probation.

## ANALYSIS

Brown argues that the indictment must be dismissed because the government agreed not to prosecute him for other conduct, including the instant offense conduct, in exchange for his guilty plea in the money laundering prosecution.[2]

---

[2] On September 20, 2011, Brown filed a motion to enforce the plea agreement and bar prosecution in case number 05 CR 73, the money laundering prosecution. The motion was denied without prejudice on September 29, 2011. *See* Case No. 05 CR 73, #86, 89.

**I.      Brown's Evidentiary Proffer**

In support of his motion, Brown has submitted supplemental materials indicating that the government began to investigate the instant mortgage fraud soon after Brown posted one of the subject residential properties for bond during the money laundering prosecution. *See* Dkt. #177 (quoting Grand Jury testimony of FBI Special Agent Kaiser). The government does not contest Brown's evidentiary proffer or Brown's assertion that it knew about some of the offense conduct in the instant indictment when it entered into the plea agreement in the money laundering prosecution. Therefore the court accepts this assertion as true.

With his reply brief, Brown has also submitted an affidavit wherein he provides the following account of his plea negotiations in the money laundering prosecution:

> The government . . . approached me and my attorney about pleading guilty even though they did not have the witness (Coates) necessary to convict me. . . . AUSA David Rubenstein . . . agreed with my attorney that the Government did not have its necessary witness, that the government did not want to start all over again with a new case against me, that if I agreed to just plead guilty to one of the smallest of the current allegations they could not prove and accept the minimal sentence outlined in the tendered agreement, the government would recommend a sentence of intermittent confinement within the applicable Guideline range and that would be the end of all my cases and matter[s] for which the US Attorney was investigating me, including the mortgage cases.

Brown Aff. ¶ 23. Brown further attests that the prosecutor "had with him a written plea agreement that said they would recommend probation with intermittent confinement so I signed it and agreed to plead guilty to the charge they could not prove in exchange for not being charged in any other matters, including the real estate matters, the Government was investigating me for." *Id.* ¶ 23. Brown avers that he "though[t] then and still believe[s] that the Government promised back in 2006 not to charge [him] with any other offenses including the mortgage fraud allegations they knew about in 2006, if [he] plea[d]ed guilty to the smallest money laundering

4

count in the indictment they knew they could not prove because Kenyatta Coates was no longer cooperating."). *Id.* ¶ 25.

Brown also asserts that the government represented that it would not prosecute him for other conduct under investigation at his sentencing. He cites the following colloquy between the prosecutor and the sentencing court, which related to the fact that the Probation Office had recommended a higher sentence than the government, apparently in reliance on an agent's report that Brown had committed numerous additional offenses. The agent's information came from Kenyatta Coates, a defendant in another case who had previously cooperated with the government.

> PROSECUTOR: Mr. Coates candidly refused to testify when it came time for trial. We struck the deal. . . . [W]e decided we weren't going to force him to testify. He's been sentenced . . . in a Black Disciple drug conspiracy to 23 years. He is facing two murder charges in state court.
>
> Those were the reasons for the agreement. I think the agreement is fair, and it's our position that you should follow the agreement.
>
> THE COURT: I don't think your agent is on the same page, but maybe that's my misinterpretation.
>
> PROSECUTOR: Well, whatever the case may be, we weren't prepared to come into court to prove it. This is what he's agreed to, and *he's done*.
>
> THE COURT: I understand. I'm just saying that . . . there is a lot in here that suggests to me a discomfort in this case. And I wanted to air that, because I really think that goes to my decision-making process. So I think we've done that.
>
> . . .
>
> PROSECUTOR: And we ask that you follow the government's version [of the offense] that we submitted to the court.

Dkt. #195, Gov't Amended Ex. C, at 7–8 (emphasis added).  Brown argues that when the prosecutor stated, "[H]e's done," he was representing that the government would not prosecute Brown for other conduct that was under investigation.

II.     **Whether the Government's Prosecution of the Instant Offense is Barred**

"The government must fulfill any promise that it expressly or impliedly makes in exchange for a defendant's guilty plea."  *United States* v. *Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992) (quoting *Santobello* v. *New York*, 404 U.S. 257, 261, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971)).  The court first looks to the written plea agreement, which it interprets according to ordinary contract principles "supplemented with a concern that the bargaining process not violate the defendant's right to fundamental fairness under the Due Process Clause."  *United States* v. *Schilling*, 142 F.3d 388, 394 (7th Cir. 1998) (quoting *United States* v. *Rourke*, 74 F.3d 802, 805 (7th Cir. 1996)).  "However, 'not every dispute arising over the meaning of a plea agreement must be construed against the government for disputed terms . . . are to be determined by the district court by objective standards.'"  *Rouke*, 74 F.3d at 806 (quoting *United States* v. *Ataya*, 864 F.2d 1324, 1331 (7th Cir. 1988)).  The court must hold an evidentiary hearing to determine the scope of a plea agreement only where the party requesting a hearing raises a significant and disputed issue of fact.  *United States* v. *Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990).

The court need not look to extrinsic evidence unless the meaning of a plea agreement is ambiguous on its face.  *United States* v. *Kingcade*, 562 F.3d 794, 797 (7th Cir. 2009); *Ingram*, 979 F.2d at 1184; *see also United States* v. *Yahne*, No. 89 CR 1104-5, 1994 WL 110138, *4–5 (N.D. Ill. Mar. 29, 1994), *rev'd on other grounds* 64 F.3d 1091 (7th Cir. 1995).  In *United States*

6

v. *Given*, 164 F.3d 389 (7th Cir. 1999), the defendant argued, like Brown, that his prosecution for mail fraud was barred by his plea agreement in a prior prosecution for bankruptcy fraud. According to the defendant's attorney, the defendant and the government had "reached an oral agreement in principle that [the defendant] would plead guilty to one count of bankruptcy fraud, which would make 'everything go away.'" 164 F.3d at 395. When the proposed plea agreement did not contain an immunity provision, the defendant's attorney complained to the prosecutor. *Id.* The prosecutor tendered a letter stating that "this office does not intend to take any further action against [the defendant] or his related business entities based upon the information now available to the government." *Id.* The defendant asserted that he had agreed to the proposed plea agreement, without any changes, based on the representations in the prosecutor's letter. The Seventh Circuit stated that there was no need to consider the prosecutor's letter as grounds for barring a subsequent prosecution for mail fraud because the plea agreement was not ambiguous and did not contain an immunity provision. *Id.* at 396.[3]

As in *Given*, Brown's prior plea agreement does not contain an explicit immunity provision. *Compare with Ingram*, 979 F.2d at 1185 (plea agreement provided that the United States Attorney's Office for the District of Colorado would "not . . . file any additional criminal charges in the District of Colorado which are known to this office arising from [the defendant's] criminal activities in the District of Colorado"). Brown argues, however, that paragraph 20 of the plea agreement constitutes a promise by the government to refrain from prosecuting Brown for any other offenses that it knew of at the time the plea agreement was entered, so long as Brown fulfilled the terms of the agreement. He focuses on the following clause:

---

[3] In addition, the Court of Appeals noted that the subsequent prosecution did not violate the spirit of the letter, even if the letter was binding. *Given*, 164 F.3d at 396.

> Defendant understands and agrees that in the event that this plea agreement is breached by defendant, and the government elects to void the plea agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph . . . .

On its face, this clause relates only to the possible penalty for Brown's failure to abide by the terms of the plea agreement. It cannot reasonably be read as a broad grant of immunity. Indeed, the introductory paragraphs of the plea agreement make clear that the agreement relates only to Brown's "criminal liability in case 05 CR 73 [the money laundering prosecution]" and that the agreement "represents the entire agreement between the United States Attorney" and Brown. In addition, the plea agreement does not mention any conduct that relates to the instant mortgage fraud prosecution. In the absence of any language in the plea agreement indicating a promise of immunity to Brown, the court will not consider the extrinsic evidence submitted in support of Brown's motion. *See Given*, 164 F.3d at 396; *see also Kingcade*, 562 F.3d at 797 ("Thus, unlike those cases involving verbal agreements, we look to extrinsic evidence of the parties' intentions – possibly found, for example, in a plea colloquy – only when the written contract is ambiguous." (citing *Given*)). From an objective standpoint, the terms of the money laundering plea agreement do not bar the instant prosecution for mortgage fraud.

The court may refuse to enforce an unambiguous plea agreement if the government engaged in "overreaching" in securing the defendant's guilty plea. *Ingram*, 979 F.2d at 1184 (quoting *United States* v. *Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)). The Seventh Circuit has not defined "overreaching," but *Ingram* implies that the term refers to bad faith by the prosecution in inducing a defendant to plead guilty. *See id.* at 1185–86; Tina M. Woehr, Note, *The Use of Parol Evidence in Interpretation of Plea Agreements*, 110 COLUMBIA L. REV. 840,

870 (Apr. 2010) ("The courts do not offer a definition over 'overreaching' . . . but the decisions imply that it relates to bad faith behavior in dealing."); *see also Rouke*, 74 F.3d at 806 (although the government need not fulfill every offer it makes, courts will enforce promises that "induced the defendant to plead guilty" (quoting *United States* v. *Traynoff*, 53 F.3d 168, 171 (7th Cir. 1995))). Neither the prosecutor's representations to the sentencing court nor Brown's affidavit supports the conclusion that the government acted in bad faith. If, as Brown represents, the government told him that the agreement would be "the end of all my cases," and Brown understood this to include the mortgage fraud cases, then Brown was free to negotiate for an explicit immunity provision. *See Given*, 164 F.3d at 396. Apparently, he did not. Furthermore, at Brown's plea colloquy the court asked the government whether any other agreements had been made as part of the plea agreement other than "the appeal waiver . . . Mr. Brown's agreement to plead guilty to one count[,] and the rest of the counts being dismissed at the time of sentencing." Ex. B to Gov't Resp. to Mot. to Dismiss at 8. The government indicated that there were no other agreements and the court then asked Brown whether that "go[es] along with [his] understanding." *Id.* Brown responded, "Yes." *Id.* Thus, at Brown's plea colloquy, neither the government nor Brown indicated that a grant of immunity was part of the plea agreement. Brown argues that the court should ignore the parties' representations because the government later stated that it had agreed to recommend a sentence of probation and intermittent confinement. Brown asserts that because the court had not specifically asked the government whether a recommended sentence was part of the plea agreement, it should have re-inquired whether there were "other terms to the agreement not contained in the written agreement." This argument is without merit. A provision regarding a recommended sentence was contained in the

9

written plea agreement; Brown's purported grant of immunity was not. To the extent that Brown seeks to challenge the sufficiency of the plea colloquy, he must raise the issue with the Court of Appeals.

For all of these reasons, Brown has not shown that the government agreed not to prosecute him for the instant offense when he pleaded guilty in the money laundering prosecution. Therefore Brown's motion to dismiss the indictment must be denied.

**CONCLUSION AND ORDER**

For the foregoing reasons, Brown's motion to dismiss the indictment [#160] is denied.

Dated: January 20, 2012

Enter: _____
 JOAN HUMPHREY LEFKOW
 United States District Judge